United States Courts
Southern District of Texas
FILED

JUN 10 2022

Nathan Ochsner, Clerk of Court

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | § § | Criminal No. **4:22-cr-271** |
| v. | § § | |
| ASHOK JAIN, M.D., | § § | |
| Defendant. | § § | |

## INFORMATION

The United States Attorney for the Southern District of Texas charges:

### General Allegations

At all times material to this Information, unless otherwise specified:

### The Medicare Program

1. The Medicare program ("Medicare") was a federal health care program providing benefits to persons who were the age of 65 or older or disabled. The benefits available under Medicare were governed by federal statutes and regulations. Medicare was administered by the United States Department of Health and Human Services ("HHS") through its agency, the Centers for Medicare & Medicaid Services ("CMS"). Individuals who received benefits under Medicare were referred to as Medicare "beneficiaries."

2. Medicare was a "health care benefit program," as defined by Title 18, United States Code, Section 24(b).

3. Medicare was divided into different parts. Medicare Part B covered certain eligible physician services, outpatient services, and other services.

4. Physicians, clinics, and other health care providers (collectively, "providers") that provide services to Medicare beneficiaries were able to apply for and obtain a Medicare "provider

1

number." Part of this application process required that providers certified they understood and would abide by the federal laws and regulations governing Medicare.

5.  A provider that received a Medicare provider number was able to file claims with Medicare to obtain reimbursement for medically necessary services provided to Medicare beneficiaries. A Medicare claim was required to set forth, among other things, the beneficiary's name and Medicare number, the services that were provided to the beneficiary, the date the services were provided, the cost of the services, and the name and identification number of the physician or other health care provider that ordered and rendered the services. When a claim was submitted, the provider certified, among other things, that:

   a. The contents of the claim form were true, accurate, and complete; and

   b. The claim form was prepared in compliance with the laws and regulations governing Medicare.

6.  Medicare required the provider to maintain complete and accurate records that documented the services provided to a Medicare beneficiary, identified who rendered the services, established the medical necessity of those services, and supported payment for those items or services.

7.  Transcranial Magnetic Stimulation ("TMS") was a non-invasive treatment that used pulsed magnetic fields to induce an electric current in a localized region of the cerebral cortex in the brain to treat depression when other treatments had not worked.

8.  For Medicare to cover TMS, TMS must have been ordered by a medical doctor or doctor of osteopathic medicine, who had examined the patient, and reviewed the Medicare beneficiary's records. Although the physician did not need to personally provide the treatment,

TMS must have been given under direct supervision of a qualified physician while the physician was present in the area and immediately available.

### The Medicaid Program

9. The Medicaid Program ("Medicaid") was a state-administered health insurance program funded by the United States government and by the State of Texas. Medicaid helped pay for reasonable and necessary medical procedures and services, such as physician services, provided by qualified health care professionals to individuals who were deemed eligible under state low-income programs. Individuals who received benefits under Medicaid were referred to as Medicaid "recipients."

10. Medicaid was a "health care benefit program," as defined by Title 18, United States Code, Section 24(b).

11. The Texas Health and Human Services Commission ("HHSC") administered Medicaid in Texas. The State of Texas contracted with Texas Medicaid and Healthcare Partnership ("TMHP") to administer Texas Medicaid on behalf of Texas HHSC.

12. Medicaid in Texas could pay a portion of a claim originally submitted to Medicare in the event the patient had both Medicare and Medicaid coverage. This portion was generally a percentage of the amount Medicare allowed for the billed charge. Such claims were automatically sent to Medicaid once processed by Medicare. Medicaid would pay its portion if Medicare originally allowed the claim.

### The Defendant and Relevant Individuals

13. Defendant **ASHOK JAIN, M.D.**, a resident of Sugarland, Texas, was a physician licensed to practice medicine in the State of Texas.

3

14.     **ASHOK JAIN, M.D.**, was the owner and operator of Psychiatric Solutions, P.C. ("Psychiatric Solutions"). Psychiatric Solutions had multiple locations, including, but not limited to, Sugarland, Texas ("the Sugarland location"); Sealy, Texas ("the Sealy location"); Katy, Texas ("the Katy location"); and Lake Jackson, Texas ("the Lake Jackson location").

15.     **ASHOK JAIN, M.D.**, was the authorized official, managing employee, and true owner of Longview Psychiatric Center PLLC ("Longview Psychiatric") in Longview, Texas, although Longview Psychiatric was on paper owned by someone else.

16.     Until in or around January 2021, Physician 1 was a physician who was licensed to practice medicine in the State of Texas.

## COUNT ONE

### Conspiracy to Commit Healthcare Fraud
### (18 U.S.C. § 1349)

17.     The allegations in paragraphs 1 through 15 of this Information are realleged and incorporated by reference as though fully set forth herein.

18.     From in or around July 2015, and continuing through in or around February 2021, in the Houston Division of the Southern District of Texas, and elsewhere, Defendant,

### ASHOK JAIN, M.D.,

did knowingly and willfully, that is, with the intent to further the objects of the conspiracy, combine, conspire, confederate, and agree with Physician 1 and others, known and unknown, to execute a scheme and artifice to defraud a health care benefit program affecting commerce, as defined in Title 18, United States Code, Section 24(b), that is Medicare and Medicaid, and to obtain, by means of materially false and fraudulent pretenses, representations, and promises, money and property owned by, and under the custody and control of, said health care benefit

programs, in connection with the delivery of and payment for health care benefits, items, and services, in violation of Title 18, United States Code, Section 1347.

### Purpose of the Conspiracy

19. It was a purpose of the conspiracy for **ASHOK JAIN, M.D.**, and his coconspirators, known and unknown, to unlawfully enrich themselves by, among other things: (1) submitting or causing to be submitted false and fraudulent claims to Medicare and Medicaid for services that were not provided, not provided as billed, and/or not eligible for reimbursement; and (2) diverting the proceeds of the fraud for their personal use and benefit.

### Manner and Means of the Scheme

The manner and means by which **ASHOK JAIN, M.D.**, and his co-conspirators sought to accomplish the purpose and objects of the scheme included, among other things, the following:

20. **ASHOK JAIN, M.D.**, and his coconspirators submitted or caused to be submitted claims to Medicare and Medicaid for TMS, patient office visits, and psychotherapy as if **ASHOK JAIN, M.D.**, provided or directly supervised those treatments and services when he did not. In reality, those services were not provided, not provided as billed, and/or not eligible for reimbursement.

21. **ASHOK JAIN, M.D.**, traveled outside the country or was otherwise absent from the Psychiatric Solutions locations and Longview Psychiatric. During these times, **ASHOK JAIN, M.D.**, and his co-conspirators submitted or caused to be submitted claims for TMS treatments, patient office visits, and psychotherapy as if **ASHOK JAIN, M.D.**, provided or directly supervised the treatment and services, usually at the Sugarland location, when **ASHOK JAIN, M.D.**, did not.

22. At **ASHOK JAIN, M.D.**'s, direction, employees of Psychiatric Solutions falsified entries in patient records, including the records of Medicare beneficiaries and Medicaid recipients,

to make it appear as though **ASHOK JAIN, M.D.**, had rendered or directly supervised treatments and services when he had not and as though patients had received treatments and services when they had not.

23. **ASHOK JAIN, M.D.**, was infrequently present at Longview Psychiatric. **ASHOK JAIN, M.D.**, paid or caused to be paid another physician ("Physician 1") to sign paperwork for treatments and services that Physician 1 also did not render or directly supervise at Longview Psychiatric.

24. When TMS was provided, **ASHOK JAIN, M.D.** and his co-conspirators directed non-physician medical professionals, including some employees who were not medical professionals, to conduct and oversee TMS.

25. **ASHOK JAIN, M.D.**, and his coconspirators directed employees of Psychiatric Solutions and Longview Psychiatric to falsify entries in patient records, including the records of Medicare beneficiaries and Medicaid recipients, to make it appear as though patients qualified for TMS treatments when they did not.

26. From in or around July 2015, and continuing through in or around February 2021, **ASHOK JAIN, M.D.**, and his coconspirators submitted or caused to be submitted approximately $8,414,840 in claims for services purportedly performed or directly supervised by **ASHOK JAIN, M.D.**, or Physician 1 that were not provided, not provided as billed, and/or not eligible for reimbursement. Medicare paid approximately $1,568.821.86 and Medicaid paid approximately $121,775 on these false and fraudulent claims.

All in violation of Title 18, United States Code, Section 1349.

## NOTICE OF CRIMINAL FORFEITURE
### (18 U.S.C. § 982(a)(7))

Pursuant to Title 18, United States Code, Section 982(a)(7), the United States of America gives notice to **ASHOK JAIN, M.D.**, that, upon conviction of Count One, all property, real or personal, that constitutes or is derived, directly or indirectly, from gross proceeds traceable to the commission of such offense is subject to forfeiture.

### Money Judgment and Substitute Assets

**ASHOK JAIN, M.D.**, is notified that upon conviction, a money judgment may be imposed against him. **ASHOK JAIN, M.D.**, is further notified that in the event that one or more conditions listed in Title 21, United States Code, Section 853(p) exists, the United States will seek to forfeit any other property of his up to the amount of the money judgment.

JENNIFER B. LOWERY
UNITED STATES ATTORNEY

JOSEPH S. BEEMSTERBOER
ACTING CHIEF, FRAUD SECTION
CRIMINAL DIVISION
U.S. DEPARTMENT OF JUSTICE

*Catherine Wagner*
Catherine Wagner
Trial Attorney
Fraud Section, Criminal Division
U.S. Department of Justice
1000 Louisiana Street, Suite 2300
Houston, Texas 77002
Catherine.Wagner@usdoj.gov
(713) 567-9515